## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Barbara Thomas** | * | |
| **713 Harry S. Truman Drive, Apt. 306** | * | |
| **Upper Marlboro, MD 20774** | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| | * | **Case No.: 22-2265** |
| | * | |
| **v.** | * | |
| | * | **JURY TRIAL DEMANDED** |
| | * | |
| **Prince George's County Public Schools** | * | |
| **Sasscer Administration Building** | * | |
| **14201 School Lane** | * | |
| **Upper Marlboro, MD 20772** | * | |
| | * | |
| *Defendant.* | * | |
| | * | |
| Serve: | * | |
| | * | |
| **Office of General Counsel** | * | |
| **Sasscer Administration Building** | * | |
| **14201 School Lane, Room 202-B** | * | |
| **Upper Marlboro, MD 20772** | * | |
| | * | |
| | * | |

## COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES

COMES NOW, Plaintiff, Barbara Thomas (hereinafter "Plaintiff" or "Ms. Thomas"), by and through her undersigned counsel, complains against Defendant, Prince George's County Public Schools (hereinafter "Defendant" or "PGCPS") and in support thereof states as follows:

1

## INTRODUCTION

1. This is a case that concerns the systemic mistreatment and abuse of a dedicated educator of thirty years, who has committed her life and career to serving her community as a public school teacher in the Prince George's County Public Schools system. Despite her decades of service, Plaintiff Ms. Barbara Thomas has been subjected to ongoing harassment and discrimination as a Black female educator over the age of sixty. Ms. Thomas is seeking redress of her grievances so that she may continue to pursue her calling in an environment that is safe and equitable, with fair compensation for her work as well as the harm and losses she has suffered due to Defendant and Defendant's officers' misconduct.

2. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII"); the Civil Rights Act of 1866, Section 1983(a) ("Section 1983"), 42 U.S.C. § 1320d-6 *et seq*.; and the Maryland Fair Employment Practices Act, Md. Code § 20-601 *et seq*. (FEPA) for the Defendant's unlawful harassment, discrimination, and hostile work environment based on race and color (Black), sex (female), age (60+) and retaliation for participation in a protected activity against the Plaintiff.

## JURISDICTION AND VENUE

3. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq*., and Section 1983, to redress and enjoin employment practices of the Defendant.

4. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

2

5. Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Prince George's County, Maryland.

6. Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant transacts substantial business in this District, and Defendant maintains employment records related to this action in the District of Maryland.

## EXHAUSTION OF REMEDIES

7. Plaintiff has exhausted all of her administrative remedies.

8. Plaintiff filed a Charge with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission ("EEOC") on or about April 25, 2019, alleging harassment, hostile work environment, racial discrimination,[1] age discrimination, and retaliation for her participation in a statutorily-protected activity.

9. The Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Right-to-Sue Letter on June 10, 2022.

10. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

---

[1] Ms. Thomas' Charge of Discrimination was drafted by an EEOC counselor based upon her interview, rather than by herself or her attorney. In her pre-charge inquiry and her interview, she discussed the fact that among other acts, she was subjected to inappropriate touching of her hair as a Black woman and other acts of racially-motivated misconduct.

## NATURE OF THE ACTION

11. Plaintiff brings this action to secure protection of rights granted under the statutes mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of those statutes.

12. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of her constitutional and statutory rights.

13. The action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

## PARTIES

14. Plaintiff, Ms. Barbara Thomas, is a Black woman who resides in Prince George's County, Maryland.

15. Defendant is a public school district administered by the government of Prince George's County, Maryland, and overseen by the Maryland State Department of Education.

16. Ms. Thomas works for Prince George's County Public Schools ("PGCPS").

17. During the relevant period, Defendant employed Plaintiff.

18. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

19. Plaintiff is employed by Defendant, Prince George's County Public Schools ("PGCPS") as an educator at Beacon Heights Elementary School.

4

20. Ms. Thomas is a Black female who directly reports to Principal Lila Walker and Vice Principal Tracey Smith, both of whom Plaintiff knows to be close friends with each other outside of work and prior to their employment together as Principal and Vice Principal at Beacon Heights.

21. On September 6, 2017, Ms. Thomas experienced an unwanted touching of her hair and the top of her head by the Vice Principal in front of her students after recently getting it cut and styled. On September 20, 2017, Ms. Thomas experienced another unwanted touching of her hair and the top of her head by Ms. Smith in front of Principal Walker, who did nothing to put a stop to the contact.

22. On October 5, 2017, Ms. Thomas was hugged awkwardly by the Vice Principal for an extended period of time without her consent after Ms. Smith had learned that Ms. Thomas had had an abnormal breast exam, causing her to feel uncomfortable.

23. On or about August 28, 2018, Vice Principal Smith harshly grabbed Ms. Thomas by her shirt and forced her out of a school program, reprimanding her for not paying attention and exhibiting a demeanor that was not befitting of a Professional Development Lead Teacher.

24. On October 26, 2018, Ms. Thomas was singled out by Vice Principal Smith regarding observation of her classroom lessons. Ms. Smith indicated her intent to videotape Ms. Thomas' lessons and after confirming with her colleagues that no one else's classes were being taped, Ms. Thomas reminded her that she had not given her permission and this was likely against the law.

25. On December 3, 2018, Ms. Thomas was given a proactive plan and made to attend a special development workshop though none of the other teachers were required to go.

26. On December 12, 2018, Principal Walker informed Ms. Thomas that a Reading Specialist would serve as a substitute in her classroom to oversee the implementation of new curricula. To Ms. Thomas' belief and knowledge, no other teachers were required to do the same. The Reading Specialist informed Principal Walker that Ms. Thomas was teaching the curriculum, and Ms. Thomas took a sample from the reading book as proof to show the Principal.

27. On December 18, 2018, Ms. Thomas sent an email to Principal Walker indicating that she believed she was being harassed and retaliated against by both Principal Walker and Vice Principal Smith, citing the undue scrutiny, disparate treatment, unwelcome and inappropriate touching, public ridicule, negative evaluations, and threats she had experienced.

28. On January 18, 2019, Vice Principal Smith cornered Ms. Thomas regarding Principal Walker's son's homework assignment, who was at the time a student in Ms. Thomas' class. She asserted that he had misplaced his homework, and demanded that Ms. Thomas figure out what happened to his homework assignment.

29. On January 22, 2019, the Vice Principal had a second confrontation with Ms. Thomas regarding Principal Walker's son's homework assignment after working hours and embarrassed her by reprimanding her in front of the child.

30. On March 7, 2019, Ms. Thomas noticed that some of her emails had been deleted from her account by a system administrator and they were never seen again. After contacting the help desk, she realized that her emails had been purposely moved. She mentioned the matter to the Principal and the Principal did not deny that the emails were removed.

31. On March 14, 2019, Ms. Thomas was required to attend a meeting with Principal Walker for which Principal Walker appeared unprepared. Despite having stated several times previously that she did not feel comfortable being in the same room with both Principal Walker and Vice Principal Smith alone, Vice Principal Smith entered the office during the conference several times and attempted to engage both women in conversation not relevant to the meeting. Around the same time, the administrators failed to give Ms. Thomas adequate notice regarding when she would be observed in her classroom. She was caught off guard when they came by her classroom to observe her later that same month.

32. On March 26, 2019, despite the fact that the safety of her students was at stake, Ms. Thomas failed to get involved in a melee involving the Principal's son (in which he was the aggressor) because she did not want to be retaliated against professionally or personally.

33. On June 18, 2018, Ms. Thomas was given a bad evaluation lacking in substance complete with disparaging comments that were never removed. Ms. Thomas protested, but signed reluctantly. She was told by the Principal that she would likely be teaching different grade for the 2019-2020 school term and that she would be told at a later date. Conversely, all of the other teachers already knew their grade/class assignments almost immediately. Contractually, Ms. Thomas was only supposed to teach outside of her subject matter area (language arts) for one year without certification. The subsequent requirement to suddenly teach science put her professional licensure in jeopardy indirectly as she was forced into a role as a science teacher that she was not equipped to fulfill. Ms. Thomas was very vocal about how displeased she was with this change.

1. After vocalizing her displeasure, on or around August 27-29, 2020, Ms. Thomas was allowed to fully decorate her classroom, without notice that she would be moved at the last

minute to another room. She was moved from a nice classroom to the darkest, dreariest, most inconveniently situated room in the school where there were bars over the window. Her new classroom had gaping holes in the walls, no running water and no access to a restroom on the inside, and was situated next to the trash receptacle.

2. On August 28, 2019, an inexperienced teacher was put in the ELA 6th grade reading position over Ms. Thomas, despite her time, education and experience in the position in retaliation for speaking up in meeting that took place on August 27, 2019 in which Ms. Thomas was informed that her teaching assignment would change.

3. On August 30, 2019, Ms. Thomas' mental state was questioned during a staff meeting in front of her colleagues.

4. On September 3, 2019, September 6, 2019, and October 21, 2019, the Vice Principal and Principal randomly visited Ms. Thomas's room and critiqued her teaching without giving formal constructive feedback, causing Ms. Thomas to feel harassed and singled out.

5. On October 23, 2019, during a school lockdown, Ms. Thomas' new, poorly situated classroom was not checked—which was against a long-standing school policy.

6. On November 14, 2019 and several other instances, Ms. Thomas' classroom was not cleaned properly, further contributing to her hostile work environment. In late 2019, Ms. Thomas requested that her door be fixed because it was a safety concern for both her and the students and it was still not fixed at the time that she took further legal action.

7. On September 17, 2020, while out on sick leave and bereavement previously approved by Principal Walker, Ms. Thomas was berated by the Principal for not completing lesson plans in preparation for a collaborative planning meeting. In addition to the fact that Ms. Thomas was on leave, teachers are not required to submit weekly lesson plans according to their

union agreement. Ms. Thomas' similarly situated colleagues also did not submit lesson plans; however, only she was reprimanded. Ms. Thomas requested that Dr. Walker and Ms. Smith refrain from contacting her directly due to the fact that the stress from obsessive supervision, age discrimination, and harassment was causing her to feel trapped, unsafe, defenseless, depressed and sleep deprived, and instead communicate with her via her Union Representative or attorney. However, this request has been ignored.

8. Since engaging in protected activity by complaining internally of the harassment and discrimination she experienced as well as filing Charges of Discrimination with the EEOC and OHR, Ms. Thomas has been subjected to ongoing retaliation, most recently resulting in her being recalled to work in the same hostile work environment despite her requests for reassignment or leave, and failure to pay her for several days of work despite having provided the appropriate paperwork to administrative staff.

9. In August 2022, Ms. Thomas was informed that she was being recalled to work despite her requests for reassignment out of the hostile work environment she is experiencing. Against Ms. Thomas' doctor's advisement, Defendant required her to report back to obtain Principal Walker's signature so she could return to work. On August 24, 2022, Principal Walker signed the paperwork and forwarded it to Defendant's payroll and absentee management office without Ms. Thomas' signature, despite Ms. Thomas having provided a signed form. On August 30, 2022, Ms. Thomas contacted Principal Walker about sending an updated form, to which she has not received a response. As a result of this misfiled paperwork, Ms. Thomas did not receive her paycheck on September 2, 2022 despite having worked for a full week, and has been prevented from accessing Defendant's technological platforms in order to complete her work.

10. The harassment and disparate treatment Plaintiff experienced are an unequivocal demonstration of discriminatory and disproportionate treatment of her as a Black woman over the age of 60, particularly when comparing her treatment and punishment to her similarly situated non-Black, male, and/or younger colleagues, and of retaliation against her as an employee who engaged in statutorily-protected activity.

11. Plaintiff continues to work in a hostile work environment where she fears discrimination and retaliation at the hands of Defendant.

12. The Defendant's discriminatory practices have been effectuated in violation of federal and state statutes, including Title VII of the Civil Rights Act, Section 1983, and FEPA.

## COUNT I

### VIOLATION OF TITLE VII - RACE DISCRIMINATION

13. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

14. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

15. Here, the four (4) elements of a *prima facie* case of race discrimination are met. The Plaintiff is Black and is considered a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff is a qualified educator, as she has approximately thirty years of experience as a dedicated teacher. Additionally, Plaintiff suffered an adverse employment action directly related to her membership in a protected class pursuant to Title

VII, when she was inappropriately physically touched by her superiors on her clothing and hair, assigned excessive duties without sufficient operational support as compared to her younger similarly-situated comparators, singled out and berated by the Principal and Vice Principal for her work, retaliated against after engaging in protected activities, and denied reassignment to a different position or time off to avoid placing her back in a hostile work environment. Finally, Plaintiff asserts that her similarly-situated non-Black colleagues have not been subjected to the same unwelcome physical contact, verbal abuse, and harassment that she has experienced.

16. The work environment and adverse action that Plaintiff was subjected to materially affected the terms, privileges, and conditions of her employment.

17. Defendant knew that Plaintiff was Black prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her race.

18. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race.

19. Defendant treated Plaintiff in a way that deprived her of workplace safety and otherwise adversely affected her status as an employee because of her race.

20. Similarly situated non-Black employees have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and her workplace conditions.

21. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

22. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

23. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

24. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her race.

25. Defendant discriminated against Plaintiff because of her race by engaging in, tolerating, or failing to prevent race discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

26. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

27. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

28. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

29. Further, Defendant's treatment and actions are ongoing.

30. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

31. Similarly situated non-Black employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

32. By law, Prince George's County Public Schools must comply with Title VII, but through their conduct have violated Title VII.

## COUNT II

**VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT**

33. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

34. When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on her statutorily protected class; (4) the harassment affected a term or condition of employment[2] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service*, EEOC Appeal No, 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

35. Here, the five (5) elements of a *prima facie* case of a hostile work environment are met. The Plaintiff belongs to a statutorily protected class as a woman, in addition to her race and color. The Plaintiff was subjected to harassment in the form of unlawful and inappropriate physical contact, verbal conduct, and disparate treatment in the form of over-assignment of duties and reprimand for unfounded accusations of infractions. This harassment affected several terms and conditions of the Plaintiff's employment, namely where the Plaintiff was

---

[2] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

severely negatively impacted by the interference with the performance of her duties, forced to use her sick leave and vacation time to avoid a hostile work environment due to the refusal to reassign her to a different environment, and the out-of-pocket costs incurred by Plaintiff in seeking psychiatric and legal help to deal with the harassment she has experienced. There is a basis for imputing liability, where Principal Walker and Vice Principal Smith, acting on the Defendants behalf, subjected the Plaintiff to the above-mentioned harassment, because of her statutorily protected class as a Black woman.

36. The actions and conduct of the Defendant as set forth herein created a hostile, offensive, and intimidating work environment and detrimentally affected Plaintiff.

37. The actions and conduct by the Defendant as set forth herein were severe, hostile, and pervasive and constituted discrimination based on sex and race.

38. The actions and conduct described herein would have detrimentally affected a reasonable person of the same sex and race in Plaintiff's position.

39. Defendant knew or should have known of the hostile work environment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop the hostile work environment.

40. By failing to protect Plaintiff within her work environment; and by allowing similarly-situated employees not of her protected classes to receive more favorable treatment than Plaintiff in the terms and conditions of employment, Defendant exacerbated the hostile work environment suffered by Plaintiff, and intentionally discriminated against Plaintiff in violation of Title VII.

41. Defendant's actions, and failure to act, amounted to discrimination based on race and sex under Title VII and the Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution. The Equal Protection Clause of the Fourteenth Amendment abrogates the states' Eleventh Amendment sovereign immunity. Title VII, through the 1972 amendment known as the Equal Employment Opportunity Act ("EEOA"), provides an enforcement remedy for equal protection violations of state employees through Section 5 of the Fourteenth Amendment.

42. As a direct result of Defendant's above-mentioned unlawful acts, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

<u>**COUNT III**</u>

**VIOLATION OF TITLE VII - SEX DISCRIMINATION**

43. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

44. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

45. Here, the four (4) elements of a *prima facie* case of sex discrimination are met. The Plaintiff is female and is considered a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff is a qualified educator, as she has approximately thirty years of experience as a dedicated teacher. Additionally, Plaintiff suffered an adverse employment action directly related to her membership in a protected class pursuant to Title VII, when she was inappropriately physically touched by her superiors on her clothing and hair, assigned excessive duties without sufficient operational support as compared to her younger similarly-situated comparators, singled out and berated by the Principal and Vice

Principal for her work, retaliated against after engaging in protected activities, and denied reassignment to a different position or time off to avoid placing her back in a hostile work environment. Finally, Plaintiff asserts that her similarly-situated male colleagues have not been subjected to the same unwelcome physical contact, verbal abuse, and harassment that she has experienced.

46. The work environment and adverse action that Plaintiff was subjected to materially affected the terms, privileges, and conditions of her employment.

47. Defendant knew that Plaintiff was female prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her sex.

48. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her sex.

49. Defendant treated Plaintiff in a way that deprived her of workplace safety and otherwise adversely affected her status as an employee because of her sex.

50. Similarly situated male employees have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and her workplace conditions.

51. Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

52. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

53. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

54. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her sex.

55. Defendant discriminated against Plaintiff because of her sex by engaging in, tolerating, or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

56. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

57. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

58. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

59. Further, Defendant's treatment and actions are ongoing.

60. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

61. Similarly situated male employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

62. By law, Prince George's County Public Schools must comply with Title VII, but through its conduct has violated Title VII.

## COUNT IV

### VIOLATION OF TITLE VII – RETALIATION

63. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

64. Title VII of the Civil Rights Act prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from retaliating against employees for engaging in activity protected by Title VII, *id.* § 2000e–3(a). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64–65 (1986).

65. Here, the Plaintiff faced retaliation for complaining internally of her mistreatment, in addition to having filed charges of discrimination with the EEOC and OHR. As a result of her protected activity, Plaintiff has since further been retaliated against as she has been recalled to work in the same environment in which she was subjected to harassment, discrimination and retaliation despite her requests to be reassigned, had her paperwork misfiled by the Principal's secretary leading to several days of work without pay, and has been denied requests for time off and/or reassignment, causing Plaintiff to have to use her leave to avoid being returned to a hostile work environment.

66. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her protected activities in violation of Title VII.

67. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff directly, advised by an EEOC or OHR representative, or otherwise should have

known that Plaintiff had filed complaints alleging harassment, discrimination, and retaliation in violation of her civil rights.

68. The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

69. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

70. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

71. Similarly situated employees were not subjected to the same, similar, or any adverse treatment.

72. Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

73. Defendant's actions were intentional, reckless, and malicious.

74. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

75. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

76. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation in protected activity.

77. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

78. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions are ongoing.

79. As a direct and proximate cause of Defendant's conduct alleged throughout this complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages—including but not limited to past and future loss of income, benefits, and career opportunities—and is entitled to all available legal and equitable remedies.

80. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

81. The Prince George's County Public Schools must comply with Title VII, and by and through its conduct, has violated the law.

## <u>COUNT V</u>

**SECTION 1983 CLAIM FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER SECTION 1981 OF THE CIVIL RIGHTS ACT**

82. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

83. Plaintiff brings claims of race discrimination against Defendant for its violations of 42 U.S.C. §1981 through 42 U.S.C. §1983, for the deprivation of her property and liberty interests as protected by the 14th Amendment to the U.S. Constitution and these federal statutes.

84. Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations.

85. The Defendant, and its responsible management officials, under 42 U.S.C. § 1983 are persons who acted "under the color of state law."

86. Defendant, PGCPS, unlawfully deprived Plaintiff of her due process rights in violation of Section 1981 of the Civil Rights Act.

87. Defendant treated Plaintiff disparately or pretextually in the terms and conditions of her employment compared with the way non-Black employees, male employees, employees under the age of forty (40), or employees that had not engaged in protected activity, were treated.

88. Plaintiff alleges that as a result of her being Black, female, over the age of 40, or because she engaged in protected activities, she was illegally harassed, subjected to a pattern of harassment and disparate treatment.

89. The acts described above are part of an institutional practice or custom, constituting an official policy of the Prince George's County Public Schools to cover up employee misconduct, discrimination, and retaliation against fellow employees who stand up against PGCPS for violations of their civil rights that should protect them from discrimination and retaliation in the workplace.

90. At all times relevant hereto, Defendant acted pursuant to a custom or policy of the Prince George's County Public Schools.

91. Defendant failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily-protected activities within the school system.

92. As a Black woman, Plaintiff is a member of a protected class.

93. As a person over the age of 40, Plaintiff is a member of a protected class.

94. Because of her race, sex, age, and engagement in statutorily protected activities, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under Section 1983.

95. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

96. Defendant knew that Plaintiff is Black prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of her race, sex, and age.

97. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race, sex, and age.

98. Defendant has limited, segregated, and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee, because of her race, sex, and age.

99. Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than the Plaintiff in the terms and conditions of employment.

100. Plaintiff's allegations clearly show a custom of discrimination as required by Section 1983.

101. Plaintiff's race, sex, and age were a determining factor in Defendant's unlawful conduct toward Plaintiff.

102. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

103. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race, sex, and age.

## COUNT VI

**VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT (FEPA)**

104. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

105. The Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't, § 20-601 *et seq*. outlaws discrimination in employment based on race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

106. Under FEPA, an employer can be held legally responsible if the person responsible for the harassment can make or recommend employment decisions (e.g., hiring and firing, promotion and demotion, and reassignments) or directs, supervises, or evaluates the work activities of the employee, even if that person does not have the power to make employment decisions. Additionally, an employer can be liable if its own negligence leads to harassment or enables harassment to continue.

107. Harassment is unwelcome or offensive conduct that is based on "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability."

108. Here, the Plaintiff was subjected to harassment or offensive conduct that is based on race, sex, and age, when she was inappropriately physically touched by her superiors on her clothing and hair, assigned excessive duties without sufficient operational support as compared to her younger similarly-situated comparators, singled out and berated by the Principal and Vice Principal for her work, and retaliated against after engaging in protected activities.

109. The above-mentioned actions by the Defendant towards the Plaintiff demonstrate the discriminatory and prejudicial manner in which the Defendant treated the Plaintiff and her lawful claims.

110. The Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race, sex, and age.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Barbara Thomas, respectfully prays that this Court grant her the following relief:

a.   Enter a declaratory judgement finding that the foregoing actions of Defendant violated Title VII, Section 1983, and FEPA;

b.   Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c.   Award back pay and compensatory damages in the amount of $500,000 (five-hundred thousand dollars and zero cents) that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits; physical and psychological injury, humiliation, embarrassment; and mental and emotional distress caused by the conduct of the Defendant alleged herein;

d.   Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.   Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: September 7, 2022

                                       Respectfully submitted,

                                       _____
                                       Dionna Maria Lewis, Esq.
                                       District Legal Group, PLLC
                                       Bar No. 19486
                                       700 Pennsylvania Ave, SE, Suite 2098
                                       Washington, D.C. 20003
                                       Phone: (202) 486-3478
                                       Dionna@DistrictLegalGroup.com
                                       *Counsel for Plaintiff Barbara Thomas*